UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HWA Y. JO,

     Plaintiff,

     v.                            Civil Action No. 03-1677 (CKK)

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

MEMORANDUM OPINION
(October 28, 2008)

This is an employment discrimination case brought by Plaintiff Hwa Y. Jo against the

District of Columbia, and three D.C. employees in their personal and official capacities – Odie

Washington, the Director of the D.C. Department of Corrections, James Anthony, the Deputy

Director of the D.C. Department of Corrections, and Steve Smith, the Warden of the D.C.

Department of Corrections (collectively, "Defendants").[1]  Plaintiff alleges that he worked as a

Lieutenant with the D.C. Department of Corrections and applied for, but was denied, a promotion

to the rank of Captain on account of his South Korean descent, in essence a claim of racial

discrimination based on his being Asian American.  Plaintiff's one-count Complaint asserts a

claim under the due process clause in the Fifth Amendment of the United States Constitution,

made actionable against state officials by 42 U.S.C. § 1983.  Following discovery in this case,

Defendants filed a [15] Motion for Summary Judgment that Plaintiff has opposed.  After a

thorough review of the parties' submissions, including the attachments thereto, applicable case

_____

[1] Plaintiff filed this suit *pro se* on August 7, 2008, but subsequently retained counsel who
entered an appearance during the discovery phrase of this case on July 23, 2004.

law, statutory authority, and the entire record of the case as a whole, the Court shall GRANT

Defendants' [15] Motion for Summary Judgment, for the reasons that follow.

## I. BACKGROUND

As a preliminary matter, Plaintiff's Opposition to Defendants' Motion for Summary

Judgment fails to comply with Local Civil Rule 7(h) despite repeated admonitions from the

Court. Local Civil Rule 7(h)(1) requires that an opposition to a motion for summary judgment be

accompanied by

> a separate concise statement of genuine issues setting forth all material facts as to
> which it is contended there exists a genuine issue necessary to be litigated, which
> shall include references to the parts of the record relied on to support the
> statement . . . In determining a motion for summary judgment, the court may
> assume that facts identified by the moving party in its statement of material facts
> are admitted, unless such a fact is controverted in the statement of genuine issues
> filed in opposition to the motion.

The Court issued an Order on April 21, 2004, explaining that the parties were expected to

comply fully with Local Civil Rule 7(h), and stating that the Court would "assume[] facts

identified by the moving party in its statement of material facts [were] admitted" unless

controverted by the non-moving party. *See* [8] Order at 2 (April 21, 2004). The Court struck

Plaintiff's initial Opposition on the grounds that it failed to comply with Local Civil Rule 7(h).

*See* [18] Order at 2-3 (Dec. 2, 2004). Nevertheless, Plaintiff's second Opposition fails to correct

the deficiencies of the initial version because it does not include *any* response to Defendants'

Statement of Undisputed Material Facts as required by Local Civil Rule 7(h). Although Plaintiff

filed his own Statement of Disputed Material Facts, it fails to "include references to the parts of

the record relied on [for] support" because it contains general or irrelevant citations, or in some

instances, no citations at all. *See, e.g.*, Pl.'s Stmt. ¶ 2 ("The 3 member review panel created an

2

appearance of compliance but did not comply with [D.C.] Department of Corrections and [D.C.] employment guidelines," without citation to any record evidence).  Accordingly, the Court shall deem all facts proffered in Defendants' Statement of Undisputed Material Facts that are properly supported by record evidence to be admitted by Plaintiff, and shall disregard Plaintiff's improper Statement of Disputed Material Facts.[2]

Plaintiff, who is of South Korean descent, was employed as a Lieutenant with the D.C. Department of Corrections ("DOC").[3]  *See* Defs.' Mot., Ex. A ¶ 8 (Affidavit of O. Washington); Pl.'s Opp'n, Ex. D (9/28/92 EEO Request for Counseling).[4]  In July 2003, the DOC considered nineteen correctional supervisors, all of which held the rank of Lieutenant, for promotion to the position of Correctional Officer, DS 007-11, more commonly known as the rank of Captain. Defs.' Stmt. ¶¶ 1, 5.  As the second highest-ranking position in the DOC's uniformed workforce, Captains carry a high level of responsibility.  *Id.* ¶ 2.  In particular, Captains are responsible for "administering the day-to-day operations of the correctional security and custody programs to ensure a consistently safe and secure working and living environment for the department's staff, visitors, and over two thousand inmates."  *Id.*  Because of these responsibilities, successful candidates applying for the rank of Captain must possess

> qualities that are difficult to quantify but impossible to overlook, including empathy, objectivity, perceptiveness, resourcefulness, adaptability and flexibility, stability, and maturity.  In addition, a Captain must be able to lead, supervise, and

---

[2]  The Court shall therefore cite either to Defendants' Statement of Undisputed Material Facts ("Defs.' Stmt.") or directly to evidence in the record, where appropriate.

[3] The parties do not indicate the date that Plaintiff began his employment with the DOC.

[4] Plaintiff's Opposition mistakenly labeled Exhibit "D" as "E" and Exhibit "E" as "F." The Court shall cite to the correct Exhibit letters.

instruct others.  He or she must be able to reason soundly and think out practical solutions to problems, to make decisions and act quickly under pressure, and to adapt easily and quickly to changing requirements.  A successful Captain must have both poise and self-confidence, and an ability to remain calm during emergency situations.  It also is critical that a Captain have a comprehensive understanding of the operations and program aspects relevant to a correctional setting.

Defs.' Mot., Ex. A ¶ 4 (Affidavit of O. Washington).

Plaintiff was one of the nineteen Lieutenants who applied for six available Captain positions in July 2003.  *Id.* ¶¶ 5, 8.  Each candidate was interviewed by a panel consisting of Odie Washington, James Anthony, and Steve Smith.  *Id.* ¶ 6.  The panel asked each candidate the same nine questions, which were "intended to promote thoughtful and meaningful discourse regarding critical issues the candidate[s] would face if selected for the position of Captain."  *Id.* ¶¶ 6, 7.  For example, the panel asked the candidates to explain why they were prepared to be Captains and to describe the issues they believed the DOC was facing.  *Id.* ¶ 6.  Mr. Washington indicates that the panel was "seeking candidates who showed a high degree of consciousness about security issues, command presence, strong managerial and leadership qualities, integrity, and interpersonal skills."  *Id.* ¶ 7.

Plaintiff was not one of the six candidates who were selected for promotion.  *Id.* ¶ 8.  Mr. Washington explains that Plaintiff failed to demonstrate that he possessed the qualities necessary to perform as a successful Captain during his interview:

[Plaintiff's] answers to the interview questions were quick, short, and nondescript. His responses appeared to be somewhat perfunctory and routine . . . [he] did not demonstrate the breadth of experience or depth of institutional understanding shown by the selected candidates.  It did not appear that Lieutenant Jo had put much thought into the issues discussed, especially in comparison to those candidates [who] were selected for promotion.

*Id.* In contrast to Plaintiff's interview with the panel, Mr. Washington explains that the candidates who were selected for the promotions

> provided the interviewers with thoughtful, thorough, and detailed responses. Their answers included information regarding their background and demonstrated the breadth of their experience with regard to several of the issues raised. The level of detail presented in the successful candidates' answers also demonstrated their command over the issues facing the department.

*Id.* ¶ 9. Three of the selected candidates who were promoted had also served as Lieutenants for at least three years longer than Plaintiff. Defs.' Stmt. ¶ 7. The other three selected candidates had served as Lieutenants for the same amount of time as Plaintiff. *Id.* ¶ 8.

Plaintiff's Complaint alleges that one or more of the "six individuals selected to be promoted to the rank of Captain by Defendants . . . were considerably less qualified for promotion than the instant Plaintiff." Compl. ¶ 9. During Plaintiff's deposition in this case, he explained that the basis for this allegation is that he was "working so hard," and that he had a job performance record that was "incredible." Defs.' Mot., Ex. B at 41:7 - 41:11 (Depo. Tr. of H. Jo). He conceded that he had no information concerning the other candidates from which to *compare* his qualifications or his interview with the panel:

Q: Were all of the 16 lieutenants who were identified as qualified interviewed?

A: Yes, ma'am.

Q: Did you talk to any of them about their interviews?

A: No, ma'am. That's the rule. I cannot talk about it to nobody.

Q: Okay. So you don't know what happened?

A: I don't know what happened.

* * *

Q: Your testimony, if I'm correct, is that you are more qualified than any of these six [candidates]?

A: Yes, ma'am

Q: Okay.  Have you ever seen the performance evaluations of any of these six individuals?

A: No, ma'am.

Q: Okay.  Why do you believe you're more qualified than any of these six individuals?

A: I already told you that I'm working so hard. [I] have a job performance record [that is] incredible.

* * *

Q: Do you have any other information besides what you've told me explaining why you believe you're more qualified than these individuals?

A: No other reason.  I work hard, but that's it.  I work hard.  Working hard, [I] try [the] best I can, and I did.[5]

*Id.* at 34:11 - 34:21, 41:4 - 43:16.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment

if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material

fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

---

[5] Plaintiff's counsel objected to Defendants' questions on the basis that Plaintiff had "no information to form an opinion concerning" the candidates' relative qualifications.  *See, e.g.*, Defs.' Mot., Ex. B at 38:14 - 38:15 (Depo. Tr. of H. Jo).  The parties were afforded the opportunity to take discovery in this case.  In fact, the Court granted Plaintiff's Motion to Enlarge the Time for Discovery even though it was filed "long after [it] would have been appropriate." *See* [18] Order at 2 (Dec. 2, 2004).  Even though Plaintiff apparently did not ascertain the qualifications of the selected candidates during discovery, the lack of evidence concerning the other candidates' relative qualifications–an essential component of Plaintiff's claim–is nevertheless a permissible, and entirely appropriate, area of inquiry.

Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment

standard, Defendant, as the moving party, bears the "initial responsibility of informing the district

court of the basis for [its] motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits which [it]

believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the

pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions

on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324

(internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be

material, the factual assertion must be capable of affecting the substantive outcome of the

litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a

reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d

1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty

Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials in the

adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary

judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must

do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

Importantly, "[w]hile summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial."  *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (quoting *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998) (internal citation omitted), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000)); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases).  "Summary judgment is not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case."  *Marshall*, 276 F. Supp. 2d at 47 (quoting *Celotex Corp.*, 477 U.S. at 327).  Accordingly, the Court reviews Defendant's Motion for Summary Judgment under a "heightened standard" that reflects "special caution."  *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C. Cir. 1997) (internal quotations omitted), *overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).  Nonetheless, while this special standard is more exacting, it is not inherently preclusive.  Although more circumspect, the Court shall continue to grant a motion for summary judgment in which the nonmoving party has

8

failed to submit evidence that creates a genuine factual dispute and the moving party is entitled to a judgment as a matter of law.

### III.  DISCUSSION

Plaintiff's Complaint names three "types" of Defendants: (1) the District of Columbia; (2) District of Columbia officials sued in their official capacities; and (3) District of Columbia officials sued in their personal capacities.  Defendants' Motion for Summary Judgment ignores the analytical differences between these Defendants and argues generally that Plaintiff cannot adduce evidence that his non-promotion was based on the unlawful discriminatory intent required to state a cognizable claim under § 1983 or Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq* (although no Title VII claim is raised in Plaintiff's Complaint).  *See* Defs.' Mot. at 6-13.  Plaintiff's Opposition argues that his non-promotion claim is properly asserted against all Defendants (without distinguishing among them), and then confusingly proceeds to make various other allegations related to a hostile work environment claim that was never pled in his Complaint.  Apparently in connection with these claims, Plaintiff includes a series of factual allegations about events occurring in and around 1992 that are not only time-barred, but also appear to have been subject to a previously-abandoned Complaint that Plaintiff filed with the DOC's Equal Employment Office counselor in 1992.  *See* Pl.'s Opp'n at 1-6 & Ex. D. Defendants' Reply argues that Plaintiff's non-promotion claim is legally deficient, and then argues that Plaintiff cannot raise new claims that were not pled in his Complaint, that such claims are time-barred, and that they nevertheless fail on the merits even if the Court were to consider them.

Claims brought under § 1983 against municipal officials in their official capacities are

treated as claims against the municipality itself.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996).  The analysis with respect to § 1983 claims brought against individuals in their personal capacities is somewhat different because individuals may claim qualified immunity.  *See Singletary v. District of Columbia*, 351 F.3d 519, 530 (D.C. Cir. 2003) (remanding the case to the district court to determine whether the plaintiff's non-promotion claim constituted a violation of § 1983 for which the individual defendants could be held liable, where "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known") (quoting *Harlow v. Fizgerald*, 457 U.S. 800, 818 (1982)).  Defendants, however, have *not* claimed qualified immunity from suit in this case.  *See generally* Defs.' Mot. & Reply.  In the absence of qualified immunity, a plaintiff may assert a § 1983 claim against any individual who was personally and directly involved in the alleged violation.  *See Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993).

The Court need not pause long to consider these threshold distinctions among Defendants because, on the facts in the record, Plaintiff's non-promotion claim fails against all Defendants for substantially similar reasons.  Accordingly, the Court shall address Plaintiff's non-promotion claim brought under § 1983 against all Defendants, noting legal differences among them only as necessary.  The Court shall then address Plaintiff's additional arguments concerning a hostile work environment that is raised for the first time in his Opposition to Defendant's Motion to Dismiss.

A.      *Non-Promotion under § 1983*

The Fourteenth Amendment's Equal Protection Clause requires states to treat similarly

situated persons alike. *Women Prisoners of the District of Columbia Dep't of Corrections v.*

*District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citing *City of Cleburne v. Cleburne*

*Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  "The District of Columbia is subject to that

requirement by virtue of the Fifth Amendment's guarantee of due process of law." *Id.*  Plaintiffs

may bring claims against state actors for violations of the Fifth Amendment through 42 U.S.C.

§ 1983.  *Byrd v. District of Columbia*, 538 F. Supp. 2d 170, 176-77 (D.D.C. 2008).

To determine whether a defendant may be held liable under § 1983, a court must conduct

a two-step inquiry.  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  First, a

court must determine whether the plaintiff has established a predicate constitutional violation.

*Id.*  Courts in this district have often applied Title VII case law to review claims of discrimination

under § 1983 to determine whether a plaintiff has established a predicate constitutional violation.

*See, e.g.*, *Elam v. Bd. of Trustees of the Univ. of the District of Columbia*, 530 F. Supp. 2d 4, 10

(D.D.C. 2007) ("federal claims of race discrimination in the employment context brought under

§ 1981 and § 1983 are also resolved under . . . Title VII principles") (citing *Carter v. Duncan-*

*Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C. Cir. 1984) (applying Title VII principles to claim

brought under § 1981)); *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 166 (D.D.C. 2005)

(applying Title VII case law to sex discrimination claim brought under § 1983) (citing

*Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995) (holding that claims of sex

discrimination brought under § 1983 and Title VII are subject to 'identical methods of proof'")).

If the first element has been established, the plaintiff must then show that the violation resulted

from the "policy or custom of the District of Columbia" in order to hold the District of Columbia responsible for the constitutional violation. *Baker*, 326 F.3d at 1306. *See also Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007). The second part of this inquiry is necessary because there is no *respondeat superior* liability arising under § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). In the instant case, Plaintiff has established neither element of this two-step inquiry.

To establish the predicate violation that his non-promotion constituted unlawful discrimination, Plaintiff must demonstrate that the actions taken by Defendants were "more likely than not based on the consideration of impermissible factors" such as race. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks and citation omitted). Where, as here, the record contains no direct evidence of discrimination,[6] it is necessary to employ the *McDonnell Douglas* tripartite burden-shifting framework. *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this paradigm, a plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If he succeeds, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason justifying its conduct. *Id.* If the defendant is successful, then "the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

---

[6] Direct evidence of discrimination "is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*." *Brown v. Small*, 437 F. Supp. 2d 125, 130 n. 7 (D.D.C. 2006) (emphasis in original) (citing *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)).

U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted).

The D.C. Circuit has clarified that the *McDonnell Douglas* prima facie factors are "almost always irrelevant" and are "largely [an] unnecessary sideshow" *Id.* at 492-93.  Where an employer asserts a legitimate, non-discriminatory reason for its challenged conduct, thereby doing "everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *Brady*, 520 F.3d at 494 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).  *See also Adeyemi v. D.C.*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (holding that the prima facie inquiry "is irrelevant when an employer has asserted a legitimate, non-discriminatory reason for an adverse employment action").  "And by the time the district court considers an employer's motion for summary judgment or judgment as a matter of law, the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision – for example, through a declaration, deposition, or other testimony from the employer's decisionmaker." *Brady*, 520 F.3d at 493.  In such circumstances, a district court's inquiry collapses into a single question: "[h]as the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* at 494.

In the present case, Defendant has proffered a legitimate, non-discriminatory reason for not promoting Plaintiff to the rank of Captain in July 2003.  Mr. Washington explains that the panel reached its promotion decisions by evaluating "the experience of each candidate, . . . whether the candidate had a residency preference provided by law to District of Columbia

residents, and the candidates' performance in his or her interview." Pl.'s Mot., Ex. A ¶ 11

(Affidavit of O. Washington). He further indicates that Plaintiff "did not demonstrate the []

qualities [associated with successful Captains] as well as the six candidates that were selected for

promotion." *Id.* ¶ 8. These statements provide a legitimate, non-discriminatory reason for

Plaintiff's non-promotion. *See Brady*, 520 F.3d at 493 (explaining that a legitimate, non-

discriminatory reason may be contained in a declaration, deposition, or other testimony from the

employer's decisionmaker).

Because Defendant has stated a legitimate, non-discriminatory reason for Plaintiff's non-

selection, Plaintiff's ability to make out a prima facie case of discrimination is irrelevant, and

Plaintiff may establish liability in one of two ways. *Fogg v. Gonzales*, 492 F.3d 447, 453 (D.C.

Cir. 2007). First, Plaintiff may pursue a "single-motive case," in which he argues that race was

the sole reason for his non-promotion and that the panel's stated reasons for his non-selection are

pretextual. 42 U.S.C. § 2000e-2(a)(1); *Ginger v. D.C.*, 527 F.3d 1340, 1345 (D.C. Cir. 2008).

Plaintiff may meet this burden by showing that "the employer treated other employees of a

different race . . . more favorably in the same factual circumstances," or by "demonstrat[ing] that

the employer is making up or lying about the underlying facts that formed the predicate for the

employment decision." *Brady*, 520 F.3d at 495. Second, Plaintiff may bring a "mixed-motive

case," in which Plaintiff does not contest the *bona fides* of the panel's proffered reasons, but

argues that race was *also* a factor giving rise to Plaintiff's non-promotion. 42 U.S.C. § 2000e-

2(m); *Ginger*, 527 F.3d at 1345.

In the present case, it appears that Plaintiff is advancing a "single-motive" case of

discrimination. *See* Pl.'s Opp'n at 1-2 ("the 'panel' used to deny Lieutenant Jo [*sic*] promotion

was a pretext used to support the formulation of an illusory independent basis for denying an

otherwise outstanding, best qualified employee [*sic*] promotion on the basis of his race").

Where, as here, a plaintiff uses the relative qualifications of applicants to demonstrate that this

non-promotion was pretextual, the plaintiff has the burden of showing that he was "*significantly*

better qualified for the job*" than the applicants that were chosen. *Holcomb v. Powell*, 433 F.3d

889, 897 (D.C. Cir. 2006). "The qualifications gap must be 'great enough to be inherently

indicative of discrimination.'" *Adeyemi*, 525 F.3d at 1227 (quoting *Jackson v. Gonzales*, 496

F.3d 703, 707 (D.C. Cir. 2007)). Such a large gap between the relative qualifications of the

applicants allows a fact-finder to "legitimately infer that the employer consciously selected a

less-qualified candidate – something that employers do not usually do, unless some other strong

consideration, such as discrimination, enters the picture." *Id.* However, in cases "where the

comparative qualifications are close, a reasonable jury would not usually find discrimination

because the jury would 'assume that the employer is more capable of assessing the significance

of small differences in the qualifications of candidates, or that the employer simply made a

judgment call.'" *Id.* (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir.

1998) (en banc)).[7]

In this case, Plaintiff has not presented *any* evidence concerning the candidates' relative

qualifications. For example, Plaintiff's Opposition baldly states that "[a] review of [Plaintiff's]

record of employment indicates that he was qualified and had more experience than the non-

Asian/American officers who were selected for promotion," without citing any record evidence.

---

[7] The D.C. Circuit has advised that district courts must "respect the employer's unfettered discretion to choose among qualified candidates." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

Pl.'s Opp'n at 5.  A review of the evidence in the record not only fails to support this assertion, but it suggests just the opposite – Mr. Washington explains that three of the candidates who were selected had served as Lieutenants for at least three years longer than Plaintiff, and the other three had served as Lieutenants for as long as Plaintiff.  Pl.'s Mot., Ex. A ¶ 10 (Affidavit of O. Washington).  Plaintiff also did not qualify for a residency preference because he lived outside the District of Columbia.  *See* Defs.' Mot., Ex. B at 9:19 - 10:6 (Depo. Tr. of H. Jo).

Although Plaintiff clearly values his own credentials and experiences, a plaintiff's subjective assessment of his own record is largely irrelevant.  *See Waterhouse v. D.C.*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) ("[P]laintiff's perception of himself, and of his work performance, is not relevant.  It is the perception of the decisionmaker which is relevant.") (internal citation and quotation marks omitted), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002);  *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (explaining that the relevant inquiry concerning the relative qualifications of candidates must focus on whether the panel "honestly believed in the reasons [it] offer[ed] for [the] selection decision").  Plaintiff's lack of evidence concerning the candidates who were selected for promotion is fatal to his qualifications-based argument because, without such evidence, Plaintiff cannot show that the gap in the candidates' relative qualifications was so great as to give rise to an inference of discrimination.

The Court also notes that Plaintiff's Opposition appears to assert that two other pieces of "evidence" suggest that Plaintiff was not promoted based on his race, but neither deserves extended discussion.  First, Plaintiff claims that the use of his picture on a DOC recruitment poster that contained the phrase "Professional Dedicated to Duty" indicates that Plaintiff was the most qualified candidate for a Captain position.  *See* Pl.'s Opp'n at 1.  Defendants explain that

16

this poster was intended to recruit minority candidates into the DOC.  *See* Pl.'s Opp'n, Ex. A at 7

(Defs.' Interrogatory Responses).  Not only is there no evidence in the record that the persons

selected for depiction in the poster were the most qualified Lieutenants in the DOC, but

Defendants explain that the other individuals depicted were not even "supervisory/managerial

employee[s] of the DOC."  *Id.*  Consequently, there is nothing about this recruitment poster that

would allow a reasonable jury to infer that Plaintiff had significantly better credentials than the

individuals who were selected for promotion to the six available Captain positions.

Second, Plaintiff claims that the absence of Asian/Americans who have been promoted to

the rank of Captain is evidence of discrimination.  Pl.'s Opp'n at 1.  Plaintiff cites no record

evidence supporting this allegation.  Even if it were true, however, that would not, *ipso facto*,

raise an inference of discrimination because it would say nothing about the number of Asian

Americans employed in the DOC, the number who were qualified to apply for Captain positions,

and the number who applied but were rejected for such promotions.  *Cf. Peace v. Wellington*, 211

Fed. App'x 352, 357 (6th Cir. 2006) (rejecting plaintiff's argument of disparate impact where

"75% of those demoted to deputy were African-American" because without additional data, the

court could only speculate as to the overall impact of the promotion examination at issue);

*Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 40 (D.D.C. 2003) (describing the five types of

statistical evidence, supported by expert testimony, used to survive summary judgment on a

disparate impact claim).[8]

---

[8] Defendants characterize Plaintiff's argument as raising a separate claim for "disparate impact" rather than an attempt to support his claim for non-promotion.  *See* Defs.' Reply at 16-18.  Even if Plaintiff had intended to raise a separate disparate impact claim, the Court agrees with Defendants that it would fail based on the lack of record evidence relating to the same.

Finally, to hold the District of Columbia liable (and Defendants in their official capacities), Plaintiff must also show that his non-promotion was the result of a policy implemented by the District of Columbia. Plaintiff cannot meet this burden because "[p]roof of a single incident of unconstitutional activity is insufficient to impose liability unless there was proof that there was a policy in place that was unconstitutional." *Plater v. District of Columbia*, 530 F. Supp. 2d 101, 107 (D.D.C. 2008) (quoting *Sanders v. District of Columbia*, 522 F. Supp. 2d 83 (D.D.C. 2007)). In this case, Plaintiff has proffered no evidence that other similarly-situated individuals were denied a promotion to Captain based on his or her race.[9] Rather, Plaintiff's Opposition describes personal slights where Plaintiff alleges that he was called names like "China-man" and "Chinese," and identifies a pay dispute that arose in the early 1990's.[10] Plaintiff offers no evidence that the decisionmakers connected with these events were the same as the members of the panel who denied him a promotion in 2003, nor does Plaintiff even identify the "policy" that he believes caused these seemingly discrete events. A plaintiff cannot demonstrate the existence of a policy or practice without first identifying an affirmative link between the constitutional violation and the policy that was the "moving force" behind it. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Accordingly, the Court finds that Plaintiff has failed to

---

[9] Plaintiff's Opposition includes an argument that Defendants chose the "least comprehensive selection procedure" available to them, Pl.'s Opp'n at 5, but fails to explain how this allegation, even if true, would give rise to an inference of racial discrimination or a policy related to the same.

[10] The pay dispute was subject to an abandoned Complaint filed by Plaintiff with the DOC's Equal Employment Opportunity Counselor. *See* Pl.'s Opp'n at 4; Defs.' Reply, Ex. 1 at Tr. 46:7 - 46:16.

establish a predicate constitutional violation, as well as a policy that would subject the District of Columbia to municipal liability under § 1983.[11]

  B.  *Hostile Work Environment*

Plaintiff's Opposition appears to assert a claim for hostile work environment.  *See* Pl.'s Opp'n at 2 ("there are incidents which evidence conduct that is sufficiently severe and pervasive to establish a racially hostile work environment that altered the terms and conditions of [Plaintiff's] employment in violate of Title VII of the Civil Rights Act of 1964."  Plaintiff alleges that "[a]s a result of the stress created by this hostile environment[,] [Plaintiff] was forced to resign."[12]  *Id.* at 2.

These arguments suffer from many deficiencies, not the least of which is that Plaintiff's Complaint pled no claims under Title VII.  It is well-established in this district that a plaintiff cannot amend his Complaint in an opposition to a defendant's motion for summary judgment.  *See DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting the plaintiff's attempt to broaden claims and thereby amend its complaint in opposition to defendant's motion

---

  [11] The Court recognizes that a plaintiff may also establish municipal liability by alleging that a high-ranking official with final decision making authority committed a violation, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986), or that such an official ratified a subordinate's action*, see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  In this case, Plaintiff has not argued that either of these circumstances exists, and instead has argued without record support that the District of Columbia has a pattern or practice of discrimination based on his non-promotion and the fact that no other Koreans were promoted to Captain in July 2003. That is far from sufficient to establish municipal liability for the reasons stated above.

  [12] Plaintiff's hostile work environment claim is based on his request for arbitration of a pay dispute in January 1992, allegations that certain of Plaintiff's co-workers referred to him as "China-man" and "Chinese" on at least two occasions, that Plaintiff was asked whether he celebrated the Fourth of July as a holiday, and that a co-worker told Plaintiff that "Chinese don't shoot pool."  Pl.'s Opp'n at 3-4.

for summary judgment).

Even if Plaintiff had included a hostile work environment claim in his Complaint, the Court would dismiss it because there is no evidence that Plaintiff ever exhausted his administrative remedies under Title VII.  *See Siegel v. Kreps*, 654 F.2d 773, 776 (D.C. Cir. 1981) (affirming district court's dismissal of the plaintiff's religious discrimination claim under Title VII because it was raised for the first time in his civil action and was not subject to administrative exhaustion); *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35-36 (D.D.C. 2008) (dismissing the plaintiff's national origin discrimination claim under Title VII because the plaintiff only identified race discrimination and retaliation in his EEOC complaint); *Brown v. District of Columbia*, 251 F. Supp. 2d 152, 162 (D.D.C. 2003) (holding that the plaintiff failed to exhaust her administrative remedies with respect to gender discrimination and retaliation claims under Title VII where she had only asserted discrimination based on race and disability in her EEOC complaint).

Because the allegations that form the basis of Plaintiff's hostile work environment claim stem from seemingly discrete incidents arising between 1992 and 1995, such a claim would also be untimely.  *See Owens v. U.U. Okure*, 488 U.S. 235, 249-50 (1989) (holding that section 1983 claims borrow the statute of limitations periods from state law for personal injury actions); *Elam v. Bd. of Trustees of the Univ. of the District of Columbia*, 530 F. Supp. 2d 4, 22 (D.D.C. 2007) (explaining that the District of Columbia has a three-year residual statute of limitations for personal injury actions, D.C. Code § 12-301(8), and that section 1983 claims carry a three-year

[limitations] period") (citing *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998)).[13]

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendants' [15] Motion for Summary Judgment. This case shall be dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date:   October 28, 2008

                                          /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge

---

[13] Defendants also interpret Plaintiff's Opposition as asserting a claim of constructive discharge. *See* Defs.' Reply at 14-16. If Plaintiff intended to raise this claim, it would fail for all of the reasons set forth in the text above, and for the additional reason that "constructive discharge" is not a cause of action in its own right. *See Simpson v. Fed. Mine Safety & Health Review Comm'n*, 842 F.2d 453, 461 (D.C. Cir. 1988) ("[c]onstructive discharge doctrines simply extend liability to employers who indirectly effect a discharge that would have been forbidden by statute if done directly").